IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
J. GARY KERNS,                    )
                                  )
          Plaintiff,              )   2:08-cv-02016-GEB-KJM
                                  )
     v.                           )   ORDER GRANTING IN PART AND
                                  )   DENYING IN PART DEFENDANT'S
THE NORTHWESTERN MUTUAL LIFE      )   MOTION FOR SUMMARY JUDGMENT*
INSURANCE COMPANY,                )
                                  )
          Defendant.              )
_____)
```

Defendant The Northwestern Mutual Life Insurance Company's ("Northwestern") moves for summary judgment on Plaintiff's breach of contract and breach of the implied covenant of faith and fair dealing claims, and on Plaintiff's request for punitive damages. Plaintiff alleges in his Complaint that Northwestern breached the parties' contract when it declined to award Plaintiff lifetime disability benefits under Plaintiff's insurance policy. Specifically, Plaintiff challenges Northwestern's determination that Plaintiff's degenerative disc disorder was caused by a "sickness" rather than by a combination of a sickness and two "accidents." Plaintiff alleges Northwestern made this determination in bad faith and therefore breached the implied covenant of good faith and fair dealing. Plaintiff alleges these breaches were "malicious[]" and entitle Plaintiff to receive punitive damages. For the following reasons, Northwestern's motion is granted in part and denied in part.

---

* This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

## I. Background

Plaintiff has two disability income policies with Northwestern: Policy D023812 ("Policy 1") and Policy D013647 ("Policy 2") (collectively, the "Policies"). (Statement of Undisputed Facts ("SUF") ¶¶ 1-3.) Under both Policies, the "maximum benefit period" available to an insured depends on whether the disability resulted from "accidental bodily injuries" or "sickness." (Id. ¶ 4.) If the disability resulted from accidental bodily injury, the insured may collect benefits for life. (Id.) If the disability resulted from sickness, the insured may collect benefits for twenty-four months for a disability beginning after age sixty-three; otherwise, the insured may collect benefits until the "first policy anniversary" after the insured's sixty-fifth birthday. (Id.) Each Policy states:

> Concurrent Disabilities. If disability results from more than one cause, the monthly disability benefit shall be the maximum payable for any one of the causes.

(Suhr Decl. Ex. A, NW-00021, Ex. B, NY-00010; SUF ¶ 8.)

On October 3, 2006, Plaintiff requested disability benefits from Northwestern, claiming that as of February 2006, he was disabled from his occupation as an insurance agent due to neck and back pain. (SUF ¶¶ 9-10.) Plaintiff alleges this pain was caused by two sporting-event related incidents in 1987 and 2001. (Id. ¶ 11.) In the first incident, Plaintiff sustained a sprained neck and concussion when he was knocked down while refereeing a college football game in 1987. (Id. ¶ 12.) In the second incident, Plaintiff was hit on the side of his head by a foul ball while a spectator at a minor league baseball game in 2001. (Id. ¶ 13.)

//

After receiving Plaintiff's claim, "Northwestern [] began administering the claim under the total disability benefit provisions of both policies." (Id. ¶ 14.) Northwestern paid Plaintiff disability benefits under Policy 1 until August 20, 2008, and under Policy 2 until August 1, 2009. (Id. ¶¶ 16, 20.) It is undisputed that Northwestern has paid all benefits owed under the Policies if Plaintiff's disability was caused by "sickness" only. (Id. ¶¶ 17, 21.)

On November 14, 2006, Northwestern acknowledged receipt of Plaintiff's request for continuance of disability benefits and requested further information to evaluate whether the disability was the result of an accident or sickness, which Plaintiff provided. (SUF ¶¶ 27-28, 43.) The information Plaintiff submitted was reviewed by Dr. Henry Alba, a medical consultant for Northwestern; he "opined that the symptoms in February 2006 appeared to be the result of a chronic and progressive cervical disc disease and not the result of the 1987 and 2001 incidents." (Id. ¶¶ 43, 50.) On May 16, 2007, Northwestern "wrote to [P]laintiff and explained in detail its claim determination that the disability was the result of sickness, rather than an accident." (Id. ¶ 51.)

## II.  Legal Standard

The movant for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). If the movant satisfies its burden, "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56 [of the Federal Rules of Civil Procedure], specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors

Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis omitted). "All reasonable inferences must be drawn in favor of the non-moving party." Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009).

### III.   Discussion

**A.   Breach of Contract**

Northwestern argues it is entitled to summary judgment on Plaintiff's breach of contract claim "since Plaintiff cannot establish entitlement to benefits . . . " (Mot. 10:13-14.) Specifically, Northwestern argues Plaintiff's breach of contract claim fails because "there was no sudden precipitating 'accident' that caused his disability." (Id. 11:3-7.) Plaintiff responds he "suffered accidental bodily injuries to his neck and head in both 1987 and 2001." (Opp'n 8:20-22.)

The Policies provide benefits for a disability "resulting from accidental bodily injuries incurred . . . while this policy is in force." (Suhr Decl. Ex. A, B.) "The rules governing policy interpretation require [the Court] to look first to the language of the contract in order to ascertan its plain meaning or the meaning a layperson would ordinarily attach to it." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 18 (1995). Neither Policy contains a definition of "accidental bodily injuries"; nor does either Policy require that the onset of the disability occur within a stated time period after the accident.

> No all inclusive definition of the word 'accident' can be given. It has been defined as a casualty-something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured. It includes any event which takes place without the foresight or

4

1         expectation of the person acted upon or affected by the event.

<u>Geddes v. Smith, Inc. v. St. Paul Mercury Indemnity Co.</u>, 51 Cal. 2d 558, 563 (1959); <u>see also</u> <u>Bilezikjian v. Unum Life Ins. Co. of Am.</u>, -- F. Supp. 2d ---, 2010 WL 444729, at *18 (C.D. Cal. 2010) (A common sense appraisal of the phrase 'accidental bodily injury,' . . . connotes an injury produced by a sudden event."). Here, it is undisputed that Plaintiff sustained a sprained neck and concussion when he was knocked down while refereeing a college football game and that Plaintiff was hit on the side of his head by a foul ball while a spectator at a minor league baseball game. (<u>Id.</u> ¶ 12-13.) It is not disputed that these incidents are "accidents." Whether these accidents are contributing "causes" of Plaintiff's disability is disputed.

        Plaintiff argues he is entitled to "lifetime benefits payable for permanent disability caused by a combination of sickness and accidental bodily injury" because "his disability was caused by both a sickness (degenerative disc disease) <u>and</u> accidental bodily injuries (1987 football incident and 2001 baseball incident)." (Opp'n 7:13-14, 19-21 (emphasis in original).) Northwestern counters this argument contradicts Plaintiff's pleadings, arguing since Plaintiff only alleged in his Complaint that his disability "was the result of an accident," he cannot now allege that his disability was the result of more than one cause. (Reply 2:14-22.)

        Northwestern relies on California Evidence Code Section 623 as its support for this pleading argument, which states: "Whenever a party has, by his own statement or conduct, intentionally or deliberately led another to believe a particular thing to be true and to act upon such belief, he is not in any litigation arising out of

such statement or conduct, permitted to contradict it." However, Northwestern has not shown that this California Evidence Code section applies to Plaintiff's federal complaint.

Plaintiff relies on the following language in each policy as support for his position that his disability determination can be based on concurrent causes:

> Concurrent Disabilities. If disability results from more than one cause, the monthly disability benefit shall be the maximum payable for any one of the causes.

(Id.) Northwestern counters this language addresses situations in which the insured has "concurrent disabilities (i.e., disabilities occurring at the same time)," and not situations in which the insured's *sole* injury has two causes. (Reply 2:23-17.) However, this provision concerns a "disability result[ing] from more than one cause."

Plaintiff argues his disability was a "result" of both sickness and the 1987 and 2001 accidents. Plaintiff cites the declaration of Doctor LeRoi Gardner, Jr. as support for his position. Dr. Gardner declares:

> Specifically, it is my opinion, based on my review of the Northwestern Mutual Life Insurance Company claims file, including all of the medical records contained therein, and other records I have reviewed that plaintiff J. Gary Kerns is permanently disabled due to his condition of chronic headache and neck pain. Further, it is my opinion that the traumatic bodily injuries that J. Gary Kerns sustained on September 19, 1987 and July 28, 2001 were and are substantial factors causing the permanent disability that Mr. Kerns suffers.

(Gardner Decl. ¶ 4.) Further, Plaintiff attached to Dr. Gardner's declaration a written report containing Dr. Gardner's opinions concerning Plaintiff's injuries and the information Dr. Gardner

6

considered in forming these opinions. (Gardner Decl. Ex. A.) Dr. Gardner discusses in his report Plaintiff's claim file and concludes, "it is my expert medical opinion Mr. Kerns is permanently disabled and that the accidents substantially contributed to his disability." (Id.) Plaintiff's evidence is sufficient to create a genuine issue of material fact as to whether Plaintiff's two accidents were a "cause" of his disability.[2] Therefore, Northwestern's motion for summary judgment on Plaintiff's breach of contract claim is denied.

**B.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

Northwestern also seeks summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing claim, arguing "even if there were an underlying breach of contract, the existence of a genuine issue regarding coverage precludes finding breach of the implied covenant." (Mot. 13:3-4.)

"[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, even if the court concludes the claim is payable under the policy terms, so long as there existed a genuine issue as [to] the insurer's liability." Franceschi, 852 F.2d at 1220 (holding that the "district court properly granted summary judgment in favor of [insurer] on [insured's] claims that [the insurer] . . . breached the implied covenant of good faith and fair dealing"); see also Bilezikjian, -- F. Supp. 2d ---, 2010 WL 444729, at *21 (stating because of "a good faith dispute over coverage, [the] claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law").

---

[2] Plaintiff has also presented four letters attached to his attorney's declaration, each from a treating physician, to which Northwestern makes a hearsay objection. The objection is sustained.

1 //

2          Plaintiff argues in support of this claim:

> Northwestern consciously ignored the language in the policies regarding concurrent causes of disability. Instead, Northwestern always took the position that the disability had to be due to either an accidental bodily injury or sickness, and not a combination thereof. This was true even after the undersigned presented the written opinions of four treating physicians that the 1987 and 2001 accidental bodily injury incidents substantially contributed to Kerns' disability.

(Opp'n 9:16-21.)  Plaintiff further argues:

> [T]here is nothing in the claims file to suggest that Dr. Alba, apparently the only physician who has reviewed this claim for Northwestern, was ever asked to give an opinion on the key issue in this case, that is, whether a combination of sickness and accidental bodily injury combined to cause Kerns' disability condition.

(Id. 9:26-10:2.)  However, Plaintiff has not presented evidence showing that Northwestern's "interpretation of the [policy] was arbitrary or unreasonable." Franceschi v. Am. Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988).  Nor has Plaintiff presented evidence showing that Northwestern ignored Plaintiff's medical records or his treating doctors' correspondence, that Northwestern deliberately sought only information to support its determination that sickness caused Plaintiff's disability.  It is undisputed that Northwestern reviewed all of Plaintiff's healthcare providers' opinions and records.  It is also undisputed that Northwestern requested and obtained medical information from health care providers it believed would have medical records regarding Plaintiff's medical care following the 1987 and 2001 incidents.  (SUF ¶ 29.)  It is further undisputed that Northwestern determined Plaintiff's disability was caused by sickness and that it paid all benefits owed pursuant to that

1  determination. (Id. ¶¶ 17, 21.) Therefore, since there existed a
2  "genuinely arguable issue" as to Northwestern's liability,
3  Northwestern's motion for summary judgment on Plaintiff's breach of
4  the implied covenant of good faith and fair dealing claim is granted.
5  Franceschi, 852 F.3d at 1220.

**C.   Punitive Damages**

Finally, Northwestern seeks summary judgment on Plaintiff's request for punitive damages, arguing "there was nothing malicious, oppressive or fraudulent in the handling of [P]laintiff's claim." (Mot. 17:14-15.) Plaintiff counters that he is entitled to punitive damages since "Northwestern has deliberately chosen to ignore the language in its own policy and framed the causation issue as being either due to accident or due to sickness to favor its own position over that of its insured." (Opp'n 10:24-16.)

Punitive damages are available if "the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1164 (9th Cir. 2002); see also Silberg v. California Life Ins. Co., 11 Cal. 3d 452, 462 (1974) ("In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud or malice.")

Plaintiff has not countered Northwestern's evidence with evidence showing that Northwestern acted with oppression, fraud, or malice in its claim determination; nor has Plaintiff presented evidence sufficient to permit a reasonable inference that Northwestern deliberately misinterpreted the Policies to "favor its own position." Therefore, Northwestern's motion for summary judgment on the punitive damages portion of Plaintiff's complaint is granted. See Franceschi,

852 F.2d at 1220 ("For the same reasons that [Plaintiff's breach of the implied covenant of good faith and fair dealing] claims were properly dismissed, punitive damages are not recoverable.").

### IV.  Conclusion

For the stated reasons, Northwestern's motion for summary judgment on Plaintiff's breach of contract claim is DENIED and its motion for summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing claim and on Plaintiff's request for punitive damages is GRANTED.

Dated:  May 26, 2010

                                    _____
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge