IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| J. GARY KERNS, | ) | |
| | ) | 2:08-cv-02016-GEB-KJM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>FINDINGS OF FACT AND</u> |
| | ) | <u>CONCLUSIONS OF LAW</u> |
| THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

A bench trial was held in this breach of contract and declaratory relief action on November 16, 2010. Plaintiff J. Gary Kerns ("Kerns") seeks damages from Defendant Northwestern Mutual Life Insurance Company ("Northwestern") for breach of insurance contracts and a declaration that he is entitled to lifetime benefits under the total disability provisions of his policies with Northwestern. Kerns has been totally disabled since 2006. The issue is whether Kerns has sustained his burden of showing that his total disability resulted from an accidental bodily injury or both accident and sickness. Northwestern rejected Kerns' claim for total disability benefits after concluding that Kerns' total disability resulted from sickness, rather than an accident.

**I. FINDINGS OF FACT**

1. The undisputed facts section of the Pretrial Order contains the following:

> Plaintiff J. Gary Kerns has two disability income policies with Northwestern. Policy D023812 contains partial and total disability provisions. Policy D013647 does not have a partial disability benefit, only total disability. Policy D023812 pays up to $400 per month for partial or total disability and the other policy pays $800 per month if plaintiff is totally disabled. The length of the maximum benefit period for the policies depends upon whether the disability results from accidental bodily injuries (for life) or sickness (first policy anniversary after age 65, or 24 months if disability begins after age 63).
>
> On October 3, 2006, plaintiff signed a request for disability benefits, and sent it to Northwestern. Plaintiff claimed as of February 2006, he was disabled from his occupation as an insurance agent due to neck and head pain. He also claimed that his disability was due to "accident" from two sporting incidents in September 1987 and July 2001. According to plaintiff, he sustained a sprained neck and concussion when he was knocked down while refereeing a college football game in 1987. In July 2001, plaintiff was hit on the side of the head by a foul ball while a spectator at a minor league baseball game.
>
> The beginning date under policy D023812 (61 days after February 2, 2006) was April 3, 2006. The maximum benefit period for sickness under this policy therefore ended on August 20, 2008 (the policy anniversary date following plaintiff's 65th birthday). Northwestern paid all benefits under these policy provisions, if disability is due to sickness. The beginning date for total disability under policy D013647 (181 days from February 2, 2007) was August 1, 2007. Per the policy, since total disability under this policy began when the insured was over age 63, he was entitled to a maximum of 24 months of disability benefits. The maximum benefit period for sickness under this policy ended on August 1, 2009. Northwestern paid all benefits under these provisions, if disability is due to sickness.
>
> On May 16, 2007, Northwestern Mutual wrote to plaintiff and explained its claim determination that the disability was the result of sickness, rather than an accident.

(ECF Doc. 41, 1:21-2:17.)

      2. The policies contain the following "Concurrent Disabilities" provision: "If disability results from more than one cause, the monthly disability benefit shall be the maximum payable for any one of the causes."

      3. Kerns is totally disabled from degenerative arthritis of the spine. Kerns' expert witness Dr. Leroibarium Gardener, an orthopedic surgeon, testified that Kerns experienced traumas in 1987 and 2001 accidents, which are "most likely" a large cause of Kerns' total disability. This opinion was not expressed with the requisite level of certitude required to support drawing a reasonable inference that an accident was a cause of Kerns' total disability. Nor is any opinion in the record opining that there is a causative connection between an accident Kerns' experienced and his total disability supported by the record. Expert opinions in the record which are based on assumptions of fact that are without evidentiary support, or which are based on conjectural factors, are insufficient to support drawing a reasonable inference that an accident was a cause of Kerns' total disability.

      4. Northwestern's expert witness Dr. Henry Alba, a specialist in physical medicine and rehabilitation (also called physiatry), opines it is "probable" that Kerns is totally disabled "due to illness rather than [an] accident." Dr. Alba testified that "the principal reason for degenerative arthritis of the spine, as well as the disks, is age." Kerns was born in 1943, and was 62 years old when he manifested symptoms of arthritis of the spine. Dr. Alba testified that degenerative arthritis of the spine is common for a 62 year old male and that Kerns' symptoms are consistent with symptoms of degenerative disk disease; the literature shows approximately 95 to 97 percent of the adult population will have evidence of degenerative disk disease at one

or multiple levels of the spine when 60 years old. Dr. Alba further opined that the accidents Kerns had in 1987 and 2001 have no causative connection to the unrelenting pain Kerns began experiencing in February 2006. Dr. Alba testified that Kerns has progressive degenerative arthritis, which was asymptomatic until 2006, and this condition was not accelerated by either or both the 1987 or 2001 accidents. Dr. Alba also opined that Kerns' medical records do not support the contention that an accident was a cause of Kerns' total disability. Dr. Alba testified that Kerns' medical records do not contain ongoing complaints of neck pain from either the 1987 or 2001 accident, and Kerns' CT scans and MRIs did not reveal traumatic injury.

5. Northwestern relied on the opinion of its medical consultant Dr. Alba and Kerns' medical records when it denied Kerns' contention that an accident is a cause of his total disability. Dr. Jonathan Beck's medical records (one of Kerns' treating physicians) are included in Kerns' medical records. Dr. Beck's medical records includes the following: As of August 2000, Kerns "continues to work satisfactorily and enjoys [his] job;" he exercises regularly, including swimming, biking and distance walking. No headaches or cervical complaints were described. Further Dr. Beck's office notes in December 2001 Kerns suffered a post-concussive syndrome as a result of the 2001 baseball accident; he continued participating in swimming and biking; and an x-ray and CT scan performed after the accident were normal.

6. On May 7, 2008, Sharon Hyde, an Assistant Director for Northwestern, advised Kerns in a letter that she reviewed all of the information Northwestern had, and concurred with the decision that the cause of disability is sickness (degenerative arthritic changes) rather than an accident (the 1987 and 2001 incidents).

4

7. Kerns was a Pac 8 or 10 football referee from 1971 -1991. Kerns continued to be involved with Pac 10 Conference officiating after 1991 as a television network liaison. No doctor ever placed a restriction or limitation on Kerns' occupational or daily activities because of the 1987 and 2001 accidents.

8. Nothing happened suddenly or unexpectedly in 2006 to cause Kerns' cervical pain.

## II. CONCLUSIONS OF LAW

1. The burden of proof is on Kerns to establish the allegations of his complaint. See White v. Aetna Life Ins. Co., 198 Cal. App. 2d 370, 376 (1961).

2. For Kerns to receive benefits beyond the maximum time allowed for sickness (i.e., for benefits for accident), he must prove that an "accidental bodily injury" was a cause of his total disability.

3. Kerns' "accidental bodily injury" claim is unsupported since, among other things, his symptoms in 2006 arose without any precipitating event.

4. An "accident" is defined by California case authority as "a casualty – something out of the usual course of events and which happens suddenly and unexpectedly and without any design of the person injured." Rock v. Traveler's Insurance Company, 172 Cal. 462, 465 (1916); Desroches v. Monumental Life Insurance Company, No. C 97-4593 VRW, 1998 U.S. Dist. LEXIS 12367, at *7 (N.D. Cal. 1998) (stating that, as to the term "accident" within insurance policies, "courts have construed the word to mean something unforeseen and unexpected; something that takes place without foresight or expectation of the person acted upon or affected by the event" and that "[a]n accident

5

usually does not occur in the usual course of things but instead results suddenly.")

5. Kerns does not prevail on his claims since an "accident" was not a cause of his total disability.

### III. CONCLUSION

For the stated reasons, Northwestern prevails on Kerns' breach of contract and declaratory relief claims, and judgment shall be entered in favor of Defendant.

Dated: November 30, 2010

```
_____
GARLAND E. BURRELL, JR.
United States District Judge
```